## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

**SHARON BURRELL**                                                                           **PLAINTIFF**

**v.**                                                 **CIVIL ACTION NO. 3:13-cv-493-CWR-FKB**

**ALLSTATE PROPERTY AND CASUALTY**
**INSURANCE COMPANY**                                                   **DEFENDANT**

## ORDER

Before the Court are Plaintiff's Motion *in Limine* Concerning Appraisal, Docket No. 174, Plaintiff's Motion *in Limine* Concerning Opinion Evidence, Docket No. 176, and Defendant's Motion *in Limine*, Docket No. 178. After considering the motions and responses to each of the above, the Court rules as follows:

**I.**     **Plaintiff's Motion *in Limine* Concerning Appraisal [Docket No. 174]**

Plaintiff argues in this motion that the Court should issue an order "excluding evidence concerning the appraisal utilized in this case, including all testimony and exhibits, pleadings, orders, arguments, references, and/or comments concerning the appraisal process." She argues that she has suffered a "total loss," and Allstate should award her the policy limits based upon § 83-13-5 of the Mississippi Code, the "valued policy statute." Because she is owed the full policy limits, she maintains, the appraisal award is irrelevant to her breach of contract claim. The appraisal award also has no bearing on her various tort claims. Plaintiff additionally argues that if the Court finds that the appraisal award is relevant, its probative value is substantially outweighed by the risk of unfair prejudice. Plaintiff further contends that the appraisal award should be set aside under *Munn v. National Fire Ins. Co. of Hartford,* 115 So. 2d 54, 58 (Miss. 1959). Docket No. 175.

Defendant responds that the appraisal is relevant to proving not only Plaintiff's claims, but also its defenses that it acted in accordance with the policy and had an arguable basis for its actions. Defendant adds that the Court should disregard Plaintiff's arguments based on § 83-13-5 because (1) this Court issued an Order mandating an appraisal to be undertaken, and (2) this Court also issued an Order preventing the Plaintiff from arguing her case under § 83-13-5 and instructing the issues from that point forward to be argued under *Munn.* Docket Nos. 43, 65.

Because the central issue to all of Plaintiff's claims is whether or not Defendant paid the correct amount afforded her under the policy, the appraisal award and process are relevant and admissible. Additionally, the appraisal's probative value is not substantially outweighed by the risk of unfair prejudice. If the jury finds that the loss was only partial, then the appraisal may be prejudicial to her computation of damages, but it is not unfairly prejudicial. *United States v. McRae*, 593 F.2d 700, 707 (5th Cir. 1979) ("Relevant evidence is inherently prejudicial; but it is only [u]nfair prejudice, [s]ubstantially outweighing probative value, which permits exclusion of relevant matter under Rule 403."). If the appraisal award equaled or exceeded the policy limits, the Court doubts Plaintiff would argue for its exclusion. *See Kuehn v. State Farm Fire & Cas. Co.*, No. 1:08-CV-577-LTS-RHW, 2009 WL 2567485, at *8 (S.D. Miss. Aug. 17, 2009) (granting Plaintiffs declaratory judgment that an appraisal in their favor was valid and binding on the parties in an insurance policy dispute).

That said, as the below discussion indicates, evidence of the appraisal award may be limited to phase two of the trial. For present purposes though, this motion is denied.

II.     **Plaintiff's Motion *in Limine* Concerning Opinion Evidence [Docket No. 176]**

Plaintiff's second motion argues that the Court should exclude lay witness and expert witness testimony and evidence "offered by Troy DePriest, Richard Gilly, Kerri Steger, Gary

Mauney, William Brian Smith, and any other employee or company representative that Sharon Burrell's house was only a partial loss and not a total loss because it was repairable."[1] Docket No. 176. Defendant acknowledges that the only expert it designated is Smith, a licensed independent insurance adjuster. Docket No. 181.

Plaintiff argues that DePriest, Mauney, and Smith should not be allowed to testify as lay witnesses because they "did not have firsthand knowledge or observation of the destruction to Ms. Burrell's house." Plaintiff additionally argues that any testimony by any of the five that she suffered only a "partial loss" is based on "scientific, technical, or other specialized knowledge within the scope of Fed. R. Evid. 702" and thus such testimony should be included within the realm of an expert witness, which Plaintiff argues that Defendant has not designated.

      a.      **DePriest, Gilly, Steger, and Mauney**

Lay witnesses may testify in the form of an opinion "rationally based on the witness's perception," helpful to determine a fact in issue, and "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701.

Here, the issue of whether there is a partial loss is an issue of fact, and not a legal opinion. As lay witnesses, DePriest, Gilly, Steger, and Mauney will be able to offer information based on their personal experiences as adjusters and appraisers on this claim. For Gilly and Steger, this might include their firsthand opinions as to the condition of Plaintiff's house, the extent of damage to the house, reports based on the observation of the house, and the procedures used to reach certain estimates in relation to the damage to the house. For DePriest and Mauney, this might include the reports, investigations, and procedures for which they have firsthand knowledge through the use of "photographs, estimates, and other documentation[]" that they

---

[1] DePriest is an Allstate supervisor; Gilly is an Allstate large loss dwelling and structure adjustor; Steger is an Allstate large loss contents adjustor; Mauney is the appraiser umpire; and Smith is Allstate's designated appraiser.

3

routinely review and rely upon in their daily jobs, and which they reviewed and relied upon with particular respect to Plaintiff's case. Docket No. 181.

### b.     Smith

Defendants have put forth Smith as an expert witness, and as such, his testimony is governed by Federal Rule of Evidence 702. This rule provides that an "expert by knowledge, skill, experience, training, or education may testify in the form of an opinion" if his expertise will be helpful to the trier of fact; "is based on sufficient facts or data; . . . is the product of reliable principles and methods; and . . . the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

The Court finds that Plaintiff has cited no compelling reason for this Court to believe that Smith is not qualified to give his opinion as to facts he may not have been personally aware of but over which he has particular expertise. Furthermore, the Court set a deadline for December 16, 2015, to file all *Daubert* motions, so Plaintiff's motion is untimely. *See Penthouse Owners Assoc., Inc. v. Certain Underwriters at Lloyd's, London*, No. 1:07-CV-568-HSO-RHW, 2011 WL 13073684, at *2 (S.D. Miss. Feb. 9, 2011) (finding that Defendant waived its challenge to expert testimony when it filed a motion in limine to exclude expert testimony after the court's deadline for *Daubert* motions had passed). Defendant has shown sufficient evidence that Smith is qualified to testify as an expert witness based on his education, experience, training, and knowledge within the insurance business. *See* Docket No. 181-1. The Court recognizes that the evidence put forth at trial may warrant additional objections for reasons not resolved herein.

This motion is denied.

**III.    Defendant's Motion *in Limine* [Docket No. 178]**

Defendant's next motion combines nine smaller motions *in limine* requesting exclusion of certain evidence. The Court will address each separately.

    **a.    Extra-Contractual, Bad Faith, and Punitive Damages**

Defendant seeks to bifurcate the trial into two phases pursuant to Rule 403. The first phase would include the breach of contract claim and the issue of compensatory damages. If liability was found on the breach of contract claim, then the second phase could include any evidence of extra-contractual, bad faith, and punitive damages.

Plaintiff acknowledges that evidence of extra-contractual and punitive damages may not be introduced until liability has been found on the breach of contract claim. However, she argues that she has asserted additional tort claims besides her breach of contract claim, including negligence, gross negligence, negligent misrepresentation, and fraudulent misrepresentation. Plaintiff argues that the trial should not be bifurcated, and she should be able to introduce "bad faith evidence and compensatory damages evidence on her negligence, negligent misrepresentation, and fraudulent misrepresentation claims to the jury." Docket No. 179, at 5. She further contends that her negligence and misrepresentation claims are "based on what Ron told her and not what is in her policy." *Id.* at 2 n.2. But, Plaintiff's bad faith and breach of contract claims are "based on her policy." *Id.*

It is within the Court's discretion to consolidate actions involving "a common question of law or fact" or to separate issues at trial "[f]or convenience, to avoid prejudice, or to expedite and economize . . . ." Fed. R. Civ. P. 42(a)-(b). The Court concludes that due to the likely overlap in evidence, the trial's first phase should include evidence relevant to Plaintiff's breach of contract, negligence, and negligent misrepresentation claims. Depending on precisely what

5

kind of evidence Plaintiff intends to put forth, fraudulent misrepresentation might be tried in phase one as well.

If the jury finds that Defendant is liable on the breach of contract claim, then the Court will consider in phase two Plaintiff's gross negligence and bad faith claims (and possibly her fraudulent misrepresentation claim if not put forth in phase one), including extra-contractual and punitive damages, if permitted. Defendant would be able to put forth evidence in phase two of the appraisal award as a defense to Plaintiff's various claims or to show there was a legitimate or arguable basis for not timely paying the total loss amount.

If, however, the jury finds Defendant did *not* breach the contract because the loss was only partial, then in phase two the Plaintiff could attempt to show under *Munn* that the appraisal award should be invalidated.

This motion is granted in part and denied in part.

  **b. Legal Fees and Costs**

Defendant argues, "Plaintiffs should be precluded from referencing and/or requesting damages in the form of attorneys' fees, legal costs and/or expenses" as such evidence would be highly prejudicial under Rules 401 and 403. The Court agrees that such evidence should not be heard in phase 1. Depending on the outcome of phase 1 of the trial, Defendant can reassert this motion, if appropriate, in phase 2.

This motion is granted as to phase 1.

  **c. Insurance Premiums**

Defendant seeks to exclude "any mention of the Plaintiff's insurance premiums, including increase in insurance premiums, if any, from Allstate or any other insurance company, following the subject accident" pursuant to Rules 401 and 403. The request is ambiguous. The

Court finds that evidence of the premium Plaintiff paid to Allstate before the fire is admissible, but that any post-fire evidence of premiums is irrelevant and inadmissible.

This motion is granted in part and denied in part.

### d. Other Lawsuits

Defendant argues that references to other claims and lawsuits involving Allstate should be excluded pursuant to Rules 401 and 403. Plaintiff does not seek to include any such evidence.

This motion is granted.

### e. Payments to Vendors and Attorneys

Defendant seeks to exclude, pursuant to Rules 401 and 403, evidence of payments made to certain vendors and attorneys, including but not limited to "Brian Smith, attorneys of Sally, Hite, Mercer, and Resor, LLC (who performed an EUO of Ms. Burrell), EFI Global, Gary Mauney, and/or Gammill Montgomery throughout the investigation of the Plaintiff's claims." Plaintiff argues that evidence of bias in the form of such payments may be introduced against Smith, Defendant's expert witness. The Court agrees. Plaintiff also argues that evidence of bias may be introduced against the other vendors that Defendant puts forth at trial. The Court also agrees. Payments to attorneys and law firms, though, are irrelevant and cannot be elicited at trial.

This motion is granted in part and denied in part.

### f. Offers of Compromise

Defendant seeks to exclude evidence of "offers of compromise" pursuant to Rule 408 of the Mississippi Rules of Evidence.[2] Rule 408 of the Federal Rules of Evidence provides:

> (a) Prohibited Uses. Evidence of the following is not admissible either to prove or disprove the validity or amount of a disputed claim:
> (1) furnishing, promising, or offering--or accepting, promising to accept, or offering to accept--a valuable consideration in compromising or attempting to compromise the claim; and

---

[2] Notably, Federal Rule of Evidence 408 is the proper standard.

7

>> (2) conduct or a statement made during compromise negotiations about the claim.
>
> (b) Exceptions. The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Plaintiff responds that she seeks "to offer evidence that she made a total loss claim for the policy limits of $348,688.00 for her dwelling, $34,689.00 for her contents, and $174,344.00 for her personal property, but Allstate only tendered her $176,000 for her dwelling, nothing for her other structure, and $50,000.00 for her contents." Docket No. 179, at 8.

Rule 408 is an exclusionary rule that bars evidence that a party offered or provided something of value to settle a disputed claim to prove liability, invalidity, or the amount of a disputed claim. The public policy behind this rule is that private resolution of disputes is favored over the litigation of costly trials.

As a practical matter, Plaintiff's entire case rests on the fact that she made a claim to Allstate for fire damage for a certain amount and that Allstate did not offer her that amount, but offered her a lesser amount. Viewing this fact in light of the briefing suggests that the parties are speaking past one another. Defendant's motion seeks to exclude offers and counter-offers made during settlement negotiations. That is an appropriate request under Rule 408. Plaintiff, meanwhile, seeks to introduce basic facts about her claim on the insurance policy. That also is entirely appropriate in a case such as this.

With this understanding, this motion is granted.

### g.    Medical Records

Pursuant to Rule 901, Defendant seeks to exclude any unauthenticated medical records that may be introduced by Plaintiff. Plaintiff responds that any medical records she might introduce will be offered and authenticated through the testimony of witnesses.

This motion is granted.

### h.    Plaintiff's Expert Delia Moore

Defendant seeks to have Plaintiff's expert witness testify only as to matters within the scope of her expert testimony, consistent with the Court's previous order. *See* Docket No. 172. Plaintiff agrees.

This motion is granted.

### i.    Lay Witnesses Testimony

Defendant argues that Plaintiff should be precluded from providing lay or expert witness testimony as to the term "total loss," and specifically from introducing the Emergency Management Report prepared by the Hazlehurst Volunteer Fire Department, which states that Plaintiff's home was a "total loss." Defendant argues that "total loss" is a specific legal and contractual term, and that allowing this term to be used by lay witnesses would be prejudicial and would confuse the jury under Rules 401 and 403. Defendant also argues this term is impermissible because it allows witnesses to give opinions on ultimate issues or questions of law. Docket No. 178, at 6; Fed. R. Evid. 704.

Plaintiff argues that the lay witnesses that observed her home have firsthand knowledge of the facts surrounding that scene and should be permitted to describe what they personally observed. Additionally she contends that while the term "total loss" might have different meanings depending on which entity or person uses the phrase, the witnesses should be allowed to explain what that term encompasses within their particular entity. Docket No. 179, at 9-10. Plaintiff suggests that the Court should issue a limiting instruction: (1) on the meaning of the phrase "total loss" and (2) to not assess credibility of the plaintiff's claim until after the Court issues liability instructions. Docket No. 179, at 11.

The issue of whether or not there was a "total loss" has essentially been the premise for this litigation. Plaintiff contends that she suffered a total loss and thus was entitled to the full policy limits. Defendant argues that Plaintiff has suffered only a partial loss, making Defendant liable only for the appraisal award. The term "total loss" has been defined by various courts and does have a distinct legal meaning in Mississippi. *Franklin Fire Ins. Co. v. Brewer*, 159 So. 545, 548 (Miss. 1935).

Rule 701 provides that lay witness testimony is limited "to those opinions or inferences rationally based on the perception of the witness and helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Furthermore, Rule 704 states, "[a]n opinion is not objectionable just because it embraces an ultimate issue." Rather, the question is whether the testimony and language used by the witness would be helpful to the jury in understanding the facts.

Where a term has both a common meaning and a legal definition, various courts have decided that it may be used in the vernacular if the lay witness's use of the word is not expressing a "separate, distinct and specialized meaning in the law." *United States v. Sheffey*, 57 F.3d 1419, 1425-26 (6th Cir. 1995) (finding there was no specialized legal terms in the question, "Did Mr. Sheffey, at the time of the accident, drive recklessly and in extreme disregard of human life?"). In other words, the witness may not define what he thinks that the legal term means, but he may use a word's common meaning to describe his personal observation in a way that is helpful to the jury. *See United States v. Akins*, 746 F.3d 590, 598 (5th Cir. 2014) (finding that Secret Service Agent could testify as to his understanding of the meaning of certain code words as long as his "testimony was rationally based on [his] own perception.").

The Court finds that allowing lay witnesses to testify about firsthand knowledge and express themselves in a manner helpful to the jury will not confuse the jury or result in unfair prejudice. Defendant may cross-examine witnesses as to their understanding of any term, or object if the testimony veers into secondhand knowledge or legal opinion.

Finally, Defendant can submit a jury instruction that a witness's opinion of such term is not to be used for its legal or contractual meaning, but rather in the common vernacular, and should not constitute an application of the law. *See United States v. Dozier*, 672 F.2d 531, 543 (5th Cir. 1982) (finding that to the extent a witness testified that defendant's behavior was "morally wrong" the Court issued an instruction that the jury would be instructed on what the law was at the close of arguments and not to rely on opinion testimony as a conclusive legal opinion).

This motion is granted in part and denied in part.

### IV. Conclusion

Given the foregoing, it is therefore ORDERED AND ADJUDGED that:

(1) Plaintiff's Motion *in Limine* Concerning Appraisal [Docket No. 174] is DENIED;

(2) Plaintiff's Motion *in Limine* Concerning Opinion Evidence [Docket No. 176] is DENIED;

(3) Defendant's Motion *in Limine* [Docket No. 178] is GRANTED IN PART and DENIED IN PART.

**SO ORDERED**, this the 4th day of August, 2016.

s/Carlton W. Reeves
UNITED STATES DISTRICT JUDGE